IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL DUROSKY, | : | CIVIL ACTION NO. **3:CV-07-1828** |
| Plaintiff | : | |
| v. | : | (Magistrate Judge Blewitt) |
| UNITED STATES OF AMERICA, | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**I. Background.**

On October 9, 2007, Plaintiff, Michael Durosky, filed this Federal Tort Claims Act ("FTCA") action, through counsel, pursuant to 28 U.S.C. § 2671, *et seq.*, (Doc. 1). Plaintiff is proceeding as against Defendant the United States.[1] Plaintiff paid the filing fee. The parties have consented to proceed before the undersigned for all matters, including trial, pursuant to 28 U.S.C. § 636(c). (Doc. 17).

The Plaintiff alleges that on March 30, 2006, the vehicle he was a passenger in was negligently struck by a National Park Service ("NPS") truck driven by an employee of the United States acting within the scope of his employment as a Ranger. Plaintiff alleges that he suffered severe and permanent injuries as a result of the collision. (Doc. 1). Plaintiff elected limited tort coverage. (Doc. 19, p. 3, ¶ 6.). However, Plaintiff sought to invoke the exception to the limited

---

[1]Plaintiff originally named two federal agencies, the Department of Interior and the National Park Service ("NPS"), as Defendants in addition to the United States. This Court dismissed Defendants Department of Interior and the National Park Service since the sole Defendant in an FTCA case is the United States.

tort election he made pursuant to 75 Pa. C.S.A. § 1705(d), and claimed that he suffered "permanent serious disfigurement" in the motor vehicle accident ("MVA").  Defendant United States contended that Plaintiff did not sustain "permanent serious disfigurement" in the MVA.

On February 27, 2008, the Court found that Plaintiff could invoke the exception to the limited tort election he made, and found that he suffered "permanent serious disfigurement," pursuant to 75 Pa. C.S.A. §1705(d).  Thus, the Court held that Plaintiff was entitled to seek non-economic damages, as well as economic damages, in this case. (Doc. 25).  *See Durosky v. U.S.*, 2008 WL 521204, M.D. Pa.

Subsequently, the Court set a non-jury trial date for November 3, 2008.  (Doc. 30).  Plaintiff filed a Trial Memorandum with Exhibits on October 21, 20008.  (Doc. 33).  The United States did not file a trial brief.

A bench trial of less than thirty (30) minutes duration was held on November 3, 2008.  The trial was limited solely to the question of damages since the United States conceded liability.  Two witnesses testified at trial, namely, Plaintiff and his father.  Plaintiff also resubmitted the April 22, 2007 expert report of his plastic surgeon, Dr. Francis Collini.  (Doc. 36).[2]  The United States did not cross examine Plaintiff's witnesses and stipulated to the Plaintiff's expert report.  Further, the United States did not present any witnesses or any evidence in its defense. Accordingly, the Court accepted Dr. Collini's report as well as the Exhibits attached to Plaintiff's Trial Memorandum as undisputed evidence.

---

[2]The report of Dr. Collini was previously filed in this case on February 7, 2008, as an exhibit to Doc. 19, *i.e.* 19-3.  This report was also attached as an Exhibit to Plaintiff's Trial Memorandum. (Doc. 33).

2

The following are the Court's findings of fact, discussion and conclusions of law.

## II. Findings of Fact.

1. Plaintiff Michael Durosky is a white male, is 5 feet and 11 inches, and weighs 160 pounds.

2. Plaintiff resides at R.R. #5, Box 5135, Bushkill, Pike County, Pennsylvania.

3. Plaintiff was 18 years old on March 30, 2006, and he is presently 20 years old.  He has a life expectancy of 57 years, *i.e.* age 78.

4. The sole Defendant is the United States.

5. Plaintiff graduated East Stroudsburg High School in 2006.

6. Plaintiff is currently employed as a heavy road construction worker in New Jersey.

7. On March 30, 2006, at approximately 7:45 a.m., Plaintiff was an unbuckled, backseat passenger in the 1995 Dodge Neon car of his friend traveling north on Route 209 in Bushkill, Pennsylvania.

8. The car in which Plaintiff was a passenger stopped to make a left turn and was hit in the rear by a Dodge Ram truck owned by the United States Park Service and driven by Park Ranger Althouse during the course of his employment.

9. The impact of the Park Service truck with the Neon Plaintiff was in caused the Neon to be pushed into the path of another vehicle which was traveling south on Route 209 and to be hit a second time, *i.e.* in the rear corner panel.

10.  Park Service Ranger Althouse operated the government truck in a negligent manner, and he directly caused the March 30, 2006 motor vehicle accident and the injuries sustained by Plaintiff.

11.  Plaintiff was knocked unconscious from the collision.

12.  Plaintiff woke up in an ambulance and saw blood everywhere.

13.  Plaintiff was taken to Pocono Medical Center.

14.  Plaintiff complained of neck pain, headache, facial lacerations, contusions, and abrasions to his scalp.

15.  Examination of Plaintiff by Dr. Herman, a plastic surgeon, at the emergency room revealed that Plaintiff had a large, irregular, complex, avulsion-type laceration to the right cheek associated with controlled bleeding.

16.  Plaintiff sustained an 8 cm., complex, deep right facial laceration that extended through his facial muscles into the parotid gland.

17.  Plaintiff's facial lacerations were cleaned out, the glass was removed, and his lacerations were sutured by Dr. Herman.

18.  Dr. Herman also treated a 2 cm. right temple laceration Plaintiff sustained that extended deep into the orbicularis oculi musculature and through the vermillion border.

19.  A CT scan revealed that Plaintiff did not have any facial fractures and he did not have any nerve damage.

20.  Plaintiff testified that after the stitches, he experienced "excruciating pain" in his face.

21.  Plaintiff was given antibiotics to prevent infection of his wounds and Tylenol No. 3 for

4

his pain.

22.  Plaintiff was treated and released from the hospital on March 30, 2006.

23. Thereafter, Plaintiff was treated conservatively by Dr. Herman on June 1, 2006, June 7, 2006 and June 21, 2006, without any surgical intervention.

24. Plaintiff consulted with Dr. Francis Collini, a Board Certified plastic surgeon, on March 6, 2007, for evaluation of his facial lacerations and scar deformities he suffered in the MVA.

25.  On April 22, 2007, Dr. Collini issued a seven-page Report following his March 6, 2007 examination of Plaintiff.

26.  The United States has stipulated as to Dr. Collini's April 22, 2007 Report, which was admitted into evidence by the Court as Plaintiff's expert report.  (Doc. 36).

27.  The Court incorporates by reference the complete seven-page April 22, 2007 Report of Dr. Collini as if fully set forth herein.  (Doc. 36).

28.  Dr. Collini's Impression of Plaintiff's injures from the MVA was:

**IMPRESSION:**

1.  Severe, disfiguring, contacted, widened, irregular, hyperpigmented, unstable, post-MVA scar deformities of the right cheek/malar complex/lower eyelid.

(Doc. 36, p. 3).

29.  To a reasonable degree of medical certainty, Dr. Collini opines that Plaintiff's injuries he sustained in the MVA are consistent with those that would be sustained after a MVA such as the one Plaintiff described and as reported in his medical records.  (Doc. 36, p. 5).

30.  Dr. Collini can perform four stages of scar revision surgeries on Plaintiff that will improve his scar by 50%.

31.  Even if Plaintiff has the scar revision surgeries, a permanent scar will always be present, and Plaintiff will have to avoid direct sun exposure without a sun block on the scar for up to one year.

32.  The total cost of the four stages of the scar revision surgeries is $25,500.00.

33.  Plaintiff presently does not suffer any physical pain from his facial scar but occasionally experiences a "tingle."

34.  Plaintiff has suffered psychological effects from the scar he sustained in the MVA, including, but not limited to, loss of confidence and self esteem, difficulty meeting people, difficulty getting a job, and constantly thinking that people are looking at his face.  The scar has also had negative effects on Plaintiff's social life, such as dating girls, due to his self-consciousness about the scar.

35.  Plaintiff has been called "scar face" following the MVA.

36.  Plaintiff can perform the physical aspects of his heavy road work construction job.

37.  Plaintiff "does not like the scar" on his face.

38.  Plaintiff looks into the mirror everyday and sees the scar, and this causes him to remember the MVA.

39.  Plaintiff's father became upset when he saw Plaintiff's face in the hospital following the MVA.

40.  The injuries to Plaintiff's face were "much worse than [Plaintiff's father] expected".

41.  Initially, Plaintiff did not realize how bad his face was.

42.  Plaintiff followed all of the doctor's instructions with respect to the care for his scar, such

as the application of creams.

43.  Plaintiff's father has witnessed Plaintiff's lost confidence due to the scar, such as the shrugging of Plaintiff's shoulders, Plaintiff's hands in his pockets, Plaintiff having only a few dates since the MVA, and Plaintiff's failure to make eye contact with people.

44.  According to Plaintiff's father, Plaintiff was a "handsome kid" prior to the scar.

45.  Plaintiff has not sought or received any treatment for the emotional and psychological effects of the scar on his face he sustained in the MVA.

46.  As a result of the injuries Plaintiff suffered in the MVA, he has incurred medical expenses for his care and treatment to date in amount of $8,279.79.  (Doc. 33, p. 6, and Ex. 6).

47.  Plaintiff's injuries are continuing in nature, and he will require future medical care, including the four stages of the scar revision surgeries which will cost $25,500.00.

48.  Plaintiff has suffered non-economic damages from the MVA in the nature of both physical and mental pain and suffering.[3]

49.  The mental pain and suffering Plaintiff experiences will continue for an indefinite time in the future and deprive him of the ordinary pleasures of life which he had enjoyed before the MVA.

50.  As a result of the MVA, Plaintiff has suffered facial scarring which cannot be fully remedied with future surgeries.

---

[3]Plaintiff makes no claim for wage loss, either past, present, or future.

**III. Discussion.**

The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. 28 U.S.C. §2675 (a). Plaintiff here is seeking damages against the United States for personal injury as a result of the March 30, 2006 MVA.

Notwithstanding Plaintiff's election of the limited tort coverage under the PMVFRL [Pennsylvania Motor Vehicle Financial Responsibility Law], as mentioned, this Court has previously found that Plaintiff may maintain a suit for non-economic damages against the United States since there was sufficient proof he suffered a serious injury. *See Durosky v. U.S.*, 2008 WL 521204, M.D. Pa.

Based on the trial testimony of Plaintiff and his father, the submissions of the Plaintiff, the photographs of Plaintiff's face, the Court's personal observation of Plaintiff's facial scarring at the February 21, 2008 argument and at the trial, as well as the April 22, 2007 Report of Dr. Collini (Doc. 19-3), the Court finds that Plaintiff's facial injuries due to the MVA constitute permanent and serious disfigurement. The Court again relies heavily upon its own observation to support its finding that Plaintiff's right side facial scars constitute "permanent serious disfigurement." Thus, the Court finds that Plaintiff has demonstrated that he suffered a serious injury in the March 30, 2006 MVA and that he is entitled to recover non-economic damages against the United States in this case.

Specifically, Dr. Collini's Report reveals:

**PHYSICAL EXAMINATION:** Well-developed, well-nourished white male in no apparent distress, oriented x 3, whose abnormal findings are limited to the facial area, which reveals evidence of multiple facial lacerations/scar deformities.  These include the following:

1.  There is a vertically oriented, 1.5 cm scar deformity extending from the right lateral canthus inferiorly for a distance of 1.5 cm onto the right lower eyelid.
2.  4 cm inferior to the tarsal margin of the right lower eyelid begins a V-shaped, irregular, depressed, and contracted, fibrotic scar deformity that is curvilinear in nature.  The superior arm of this V-shaped scar deformity measures 6 cm and the inferior arm, 4.5 cm.
3.  On the inferior arm of the V-shaped scar deformity, the scar is widened for a distance of approximately 1 cm. This is most likely, the area of skin necrosis described in the notes of Dr. Herman which healed by secondary intention.
4.  There is a circular, hyperpigmented scar deformity located on the lateral end, just superior to the contracted scar deformity located on the upper arm of the V-shaped scar deformity described.
5.  The skin edges of this contracted scar deformity are not even. There is a significant step-off, which is clearly visible to a casual observer from a conversation distance.
6.  The scars are fully mature.  I do not believe that they will obtain a greater degree of improvement in the future.
7.  There are no other abnormal findings on the patient's physical examination.

Dr. Collini's Assessment  was as follows:

**ASSESSMENT:**

1. The scar deformities described and permanent and disfiguring in nature. They are clearly visible to a casual observer from a conversation distance and require surgical intervention for treatment as described above.

(Doc. 36, p. 4).

Dr. Collini concluded as follows:

> The patient in question has a scar that extends perpendicular to the resting skin tension lines, which places this patient at considerable risk for having a permanent, disfiguring scar deformity even after a successful scar revision is performed.

(Doc. 19-3 and Doc. 36).

Thus, the Court finds that Plaintiff has produced sufficient probative evidence to support a finding that he suffered "permanent serious disfigurement" as a result of the March 30, 2006 MVA. Plaintiff has also offered undisputed evidence *via* Dr. Collini's Report that his facial injury may be a permanent, disfiguring scar deformity, regardless of whether he undergoes future surgeries. At best, Plaintiff would achieve a 50% improvement.

The United States was responsible for causing the March 30, 2006 MVA and Plaintiff's injuries, both physical and mental. The United States has conceded that the failure of Ranger Althouse to stop on March 30, 2006, and his collision with the Neon in which Plaintiff was a passenger, was below the standard of care required to safely operate a vehicle. The details of the injuries Plaintiff suffered in the MVA have been set forth fully in the expert report of Dr. Collini, which has been admitted into evidence by the Court. (Doc. 36). There is no dispute regarding the description of Plaintiff's injuries as stated in Dr. Collini's Report. There is no dispute that all of Plaintiff's injuries sustained in the MVA were caused by the negligence of the United States. Thus, due to the negligence of the United States, Plaintiff suffered right side facial scars which constitute permanent serious disfigurement.

The sole issue before the Court is the amount of damages to which Plaintiff is entitled. He should be compensated for the following damages: past, present and future physical pain and suffering; past, present and future mental suffering; past, present and future deprivation of the ordinary pleasures of life; and past and future medical expenses.[4] In our case, the Court must determine the amount of the stated categories of damages to be awarded to Plaintiff.

As the Court stated in *DeCarlo v. U.S.*, 2002 WL 31499281, *27-*28 (M.D. Pa.):

> With respect to the governing legal standard, it is well settled that we are bound to apply Pennsylvania damage law to this case because in fashioning the [Federal Tort Claims Act] Congress defined the liability of the United States in terms of a "private person" in the place of where the tort occurred. *Barnes v. United States*, 685 F.2d 66, 68 (3d Cir. 1982). The Court of Appeals for the Third Circuit in *Barnes* further stated with respect to damage awards that the standard under the Tort Claim Act is compensatory . . . The objective of compensation in tort law is "to place the plaintiff in the same economic position as would have been his if the injury had not occurred." *Russell v. City of Wildwood*, 428 F.2d 1176, 1181 (3d Cir. 1970). "The purpose of personal injury compensation is neither to reward the plaintiff, nor to punish the defendant, but to replace plaintiff's losses." *Domeracki v. Humble Oil & Refining Company*, 443 F.2d 1245, 1250 (3d Cir.), *cert Denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971). *Id.* at 69.

The Court now discusses the awards for the applicable categories of damages.

---

[4]We again note that Plaintiff does not seek damages in the nature of wage loss, either past, present or future. In fact, at trial, Plaintiff testified that he could perform all of the physical aspects of his present job as a heavy road construction worker. Also, there is no evidence that Plaintiff is presently undergoing any medical treatment for his scar, so no damages will be awarded for present medical care.

11

1. Past Medical Expenses

While Plaintiff did not present any evidence at trial regarding the amount of his past medical care for the injuries he sustained in the MVA, his Trial Memorandum and attached exhibits indicate that his damages for past medical care totaled $8,279.79. (Doc. 33, p. 6, and Ex. 6). The United States has not presented any evidence to dispute the amount of Plaintiff's past medical expenses. The Court accepts the undisputed monetary amounts, as specified in Plaintiff's Trial Memorandum and attached Exhibits, of the past medical expenses Plaintiff incurred due to his injuries from the MVA as follows:

| | |
|---|---|
| Pocono Medical Center | $ 4,177.79 |
| Pocono Emergency Room Doctors | $ 428.00 |
| Bushkill Emergency Company | $ 528.00 |
| Monroe Radiology Imaging | $ 456.00 |
| Charles Herman, M.D. | $2,590.00 |
| Francis J. Collini, M.D. | $ 100.00 |
| Total: | $8,279.79 |

(Doc. 33, p. 6, and Ex. 6).

Thus, the Court will award the amount of $8,279.79 to Plaintiff for past his medical expenses.

2. Future Medical Expenses

The next aspect of Plaintiff's damages award the Court will consider is the amount of his future medical expenses. This amount is clear since it is the total amount of the four stages of the

scar revision surgeries Dr. Collini can perform to improve Plaintiff's facial scarring by 50%, namely $25,500.00. (Doc. 36, pp. 3-4).

The *DeCarlo* Court stated:

> According to Pennsylvania law "a plaintiff is entitled to be compensated for . . . all future medical expenses *reasonably likely to be incurred for the treatment and care of his injuries."* McDonald v. United States*, 555 F.Supp. 935, 962 (M.D. Pa. 1983) (Conaboy, J.) (Emphasis added). The court in *McDonald* further commented that[:]
>
> [t]he "law does not require that proof in support of claims for damages or in support of compensation must conform to the standard of mathematical exactness." . . . All that the law requires is that "(a) claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough." . . . "If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation."

*Id*. (quoting *Kaczkowski v. Bolubasz*, 491 Pa. 561, 567, 421 A.2d 1027 (1980)).

The United States does not contest that $25,500.00 is the amount of the costs of the four stages of the scar revision surgeries that will likely improve Plaintiff's scar by 50%. Plaintiff testified that he desires to have the scar revision surgeries performed by Dr. Collini. The Court finds that Plaintiff is entitled to have the scar revision surgeries and that any improvement to Plaintiff's scar is justified. Thus, the amount of $25,500.00 for future medical expenses reasonably likely to be incurred by Plaintiff for the treatment of his scar will be included in the Court's total award entered in this case. (Docs. 36 and 33-3).

The Court will now address the non-economic damages to be awarded to Plaintiff for his physical pain and suffering, his past, present and future mental anguish, loss of enjoyment of life,

13

and disfigurement.  The *DeCarlo* Court stated, "Pennsylvania law requires an award of non-economic damages to include compensation for a plaintiff's physical pain and suffering, mental anguish, inconvenience, and loss of enjoyment of life including reduction in life expectancy.  *See McDonald v. United States*, 555 F.Supp. 935, 971 (M.D. Pa. 1083) (Conaboy, J.) (citing *Frankel v. Heym*, 466 F.2d 1226 (3d Cir. 1972))." 2002 WL 31499281, *34.

  3.  Past Physical Pain and Suffering

The Court now addresses the Plaintiff's damages for past physical pain and suffering.  As detailed above, Plaintiff was knocked unconscious after the MVA and awoke in the ambulance.  Plaintiff sustained an 8 cm., complex, deep right facial laceration that extended through his facial muscles into the parotid gland.  Plaintiff's facial lacerations were cleaned out, the glass was removed, and his lacerations were sutured by Dr. Herman.  Dr. Herman also treated a 2 cm. right temple laceration Plaintiff sustained that extended deep into the orbicularis oculi musculature and through the vermillion border.  Plaintiff experienced excruciating pain after the stitches were applied to his facial lacerations.  Plaintiff was given antibiotics to prevent infection of his wounds and Tylenol No. 3 for his pain.  Plaintiff was treated and released from the hospital on March 30, 2006.  Thereafter, Plaintiff was treated conservatively by Dr. Herman, on three occasions in June 2006, without any surgical intervention.  Plaintiff did not suffer any fractures to his face or nerve damage.  Plaintiff does not presently suffer any physical pain.

The Court will award Plaintiff the amount of $10,000.00 for past physical pain and suffering based on the undisputed evidence and, in particular, Plaintiff's testimony detailed above.

4. Past, present and future mental suffering, and loss of enjoyment of life

The Court now considers the award for Plaintiff's past, present and future mental suffering, as well as his loss of enjoyment of life. As stated, Plaintiff was 18 years old at the time of the MVA, and he is presently 20 years old with a life expectancy of 57 years. Plaintiff will have a permanent facial scar for about 57 years even if he undergoes the revision surgeries. Plaintiff has suffered several psychological effects from the scar he sustained in the MVA, including, but not limited to, loss of confidence and self esteem, difficulty meeting people, difficulty getting a job, and constantly thinking that people are looking at his face. Plaintiff also experiences negative effects on his social life from the scar, such as dating girls due to being self-conscious about the scar. Plaintiff has been forced to endure certain indignities following the MVA, such as being called "scar face." Plaintiff "does not like the scar" on his face. Plaintiff looks into the mirror everyday and sees the scar, and this causes him to remember the MVA.

Plaintiff's father has witnessed Plaintiff's lost confidence due to the scar, such as the shrugging of Plaintiff's shoulders, Plaintiff's hands in his pockets, Plaintiff having only a few dates since the MVA, and Plaintiff's failure to make eye contact with people. However, Plaintiff has not sought or received any treatment for the emotional and psychological effects of the scar on his face. Nor did Plaintiff testify that he would be seeking, in the future, any treatment with respect to the mental anguish which the scar has caused him.

The Court finds, based on the undisputed evidence of Plaintiff, that the amount of damages he has shown to a reasonable certainty for past, present and future mental suffering, as well as loss of enjoyment of life, is $145,500.00, which is broken down as $25,000.00 for past mental suffering,

$35,000.00 for present mental suffering, and $85,500.00 for future mental suffering over a period of approximately 57 years. The testimonies of Plaintiff and his father provide a reasonable basis for calculating Plaintiff's award for future mental anguish as $1,500.00 per year for the next 57 years, the full remainder of Plaintiff's life expectancy.

     5. Disfigurement

As discussed above, the Court has found that Plaintiff has suffered permanent disfigurement as a result of the MVA. Therefore, in addition to the amounts which the Court will award for pain and suffering and for mental suffering, Plaintiff is entitled to be fairly and adequately compensated for the facial disfigurement he has suffered in the past as a result of the MVA, and that he will continue to suffer during the future duration of his life.

Under Pennsylvania law, non-economic damages include, but are not limited to, pain and suffering, loss of enjoyment of life, disfigurement and humiliation. *See Klein v. Nat'l. R.R. Passenger Corp.*, 2008 WL 879968 (E.D. Pa.). As discussed above, the evidence regarding Plaintiff's disfigurement due to his permanent facial scar was compelling, especially considering his young age and the effects on his ability to socialize, such as making eye contact with people and dating. The location of Plaintiff's scar and the duration he must live with it warrant a significant award of damages for disfigurement.

The amount of damages for the facial scar which has permanently disfigured Plaintiff is $25,000.00.

The Court's total award to Plaintiff will be in the amount of $214,279.79, consisting of $43,779.79 with respect to damages elements Nos. 1-3 above, $145,500.00 with respect to

damages element No. 4 above, and $25,000.00 with respect to damages for disfigurement.

The *DeCarlo* Court indicated that "the burden of proof shifts to the government after a Plaintiff in a [FTCA] case establishes the amount of and entitlement to damages to a reasonable degree of certainty." 2002 WL 31499281, *30.  The United States has not presented any evidence seeking to reduce the amount of damages which Plaintiff has shown to a reasonable certainty. Plaintiff's uncontested evidence, including the exhibits attached to his Trial Memorandum, the testimony he presented at trial, and the Report of Dr. Collini, has demonstrated the total amount of the damages to which he is entitled to a reasonable degree of certainty is $214,279.79.

**IV.  Conclusions of Law.**

1.  The United States is liable to Plaintiff under the FTCA for the following damages:  past and future medical expenses; past physical pain and suffering; past, present and future mental suffering; loss of enjoyment of life; and disfigurement.

2.  Pennsylvania law applies to the determination of damages Plaintiff will awarded.

3.  The standard for damages under the FTCA is compensatory.

4.  Plaintiff will be awarded damages for future mental pain and suffering since he will have to endure a permanent scar on his face for about 57 years.

5.  "The objective of compensatory damages is to place the Plaintiff in the same position in which he would have been if his injury had not occurred."  *DeCarlo*, 2002 WL 31499281, *34.

6.  In determining damages for loss of enjoyment of life, the Court considers the degree to which Plaintiff's facial scar impacts on his ability to engage in social activities such as meeting people and dating.

7. In determining damages to be awarded for Plaintiff's future mental anguish and loss of enjoyment of life, the Court accepts the notion that Plaintiff will live at least 57 more years.

8. An award of damages in the amount of $8,279.79 properly compensates Plaintiff for his past medical expenses.

9. An award of damages in the amount of $25,500.00 properly compensates Plaintiff for his future medical expenses.

10. An award of damages in the amount of $10,000.00 properly compensates Plaintiff for his past physical pain and suffering.

11. An award of damages in the amount of $145,500.00 properly compensates Plaintiff for his past, present and future mental suffering as well as loss of enjoyment of life.

12. An award of damages in the amount of $25,000.00 properly compensates Plaintiff for his disfigurement.

13. Plaintiff is entitled to a total award of $214,279.79, which includes both his past and future medical expenses as well as his non-economic damages.

An appropriate Order follows.

                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: December 1, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL DUROSKY, | : | CIVIL ACTION NO. **3:CV-07-1828** |
| Plaintiff | : | |
| v. | : | (Magistrate Judge Blewitt) |
| UNITED STATES OF AMERICA, | : | |
| Defendants | : | |

### **ORDER**

**AND NOW,** this 1st day of **December, 2008**, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff is entitled to a total award of $214,279.79, which includes both his past and future medical expenses as well as his non-economic damages.

2. The Clerk of Court is directed to enter Judgment in favor of Plaintiff Michael Durosky and against Defendant United States in the amount of $214,279.79.


                              **s/ Thomas M. Blewitt**
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: December 1, 2008**